UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
NORDSENSE, INC.,

                Plaintiff,

                -against-

ULTRALIFE CORPORATION,

                Defendant.
------------------------------------------------------- X

Civil No.:

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

NORDSENSE, INC., by and through its attorneys, Cooley LLP, alleges for its complaint:

1.     Plaintiff Nordsense, Inc. ("Nordsense") brings this lawsuit against Defendant Ultralife Corporation ("Ultralife" or "Defendant") for breach of contract arising from Nordsense's purchase of defective ER18505M*2 Lithium metal batteries (the "Batteries") through Ultralife's authorized agent, Able New Energy Company ("Able" or "Ultralife China"). Nordsense seeks approximately $10,000,000 in damages resulting from Ultralife's breach of contract

## **PARTIES**

2.     Nordsense is a Danish company incorporated under the laws of Denmark, with its principal place of business at Vendersgade 28, 2. th, 1363 København, Denmark.

3.     Nordsense is revolutionizing waste management with its smart bin sensors (the "Sensors"). The Sensors leverage advanced technology to monitor the fill levels of waste bins in real time. By providing data on when bins are nearing capacity, Nordsense enables municipalities and businesses to optimize their waste collection routes, resulting in less environmental impact and reduced operational cost. The Sensors' data-driven approach not only enhances efficiency, but also promotes more sustainable practices as well by ensuring resources are allocated where they are most needed, paving the way for smarter and greener cities.

4. Ultralife is a Delaware battery manufacturing corporation with its principal place of business at 2000 Technology Pkwy., Newark, New York, 14513 at all relevant times.

5. Ultralife operates through several global divisions, including through its manufacturing agent, Able, which it also refers to as "Ultralife China." Ultralife identifies Able as part of its global business, with its China location considered a "strategic location . . . ideally positioned to service global customers."

## JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the contracts between the parties are governed by the United Nations Convention on Contracts for the International Sale of Goods ("C.I.S.G.") and because this action is between a citizen of a foreign state and a citizen of New York and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. This Court has personal jurisdiction over Ultralife because it is domiciled in New York, transacts business within the state, and committed the acts alleged herein within the state.

8. Venue is proper in this District under 28 U.S.C. §1391(b) because Ultralife is present in this District and a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### Ultralife Supplied Defective Batteries to Nordsense

9. Nordsense needed a battery supplier to get its products into the hands of customers. Not wanting to trust the task to just anyone, Nordsense conducted a thorough search and met with several different battery manufacturers.

10. After lengthy talks with each of these possible suppliers, Nordsense turned to Ultralife, choosing Ultralife and its batteries because it believed they were a reliable US-based

supplier offering high-quality batteries with excellent performance and durability.

11. However, before buying larger quantities of batteries from Ultralife, as noted below, Nordsense spent more than a year working with Ultralife to ensure the batteries would be the proper fit. As part of these in-depth discussions, Ultralife shared detailed specifications of its batteries with Nordsense, and Nordsense shared details and requirements of its sensors with Ultralife to ensure the products, when put together, would be the perfect match.

12. Satisfied with Ultralife's representations and convinced that Ultralife's batteries were the right ones for its Sensors, Nordsense subsequently submitted purchase orders for a total 40,000 ER18505M*2 Lithium metal batteries to Ultralife's agent, Able.

13. On or about November 3, 2021, Ultralife's agent, Able sent an Order Confirmation confirming Nordsense's purchase of 10,000 ER18505M*2 Lithium metal batteries, with 5,000 to be shipped in January 2022, and the remaining 5,000 to be shipped in March 2022. This order confirmation is attached hereto as Exhibit 1.

14. On or about May 12, 2022, Ultralife's agent, Able sent an Order Confirmation confirming Nordsense's purchase of 10,000 ER18505M*2 Lithium metal batteries, to be shipped in July 2022. This order confirmation is attached hereto as Exhibit 2.

15. On or about February 22, 2023, Ultralife's agent, Able sent an Order Confirmation confirming Nordsense's purchase of 20,000 ER18505M*2 Lithium metal batteries, with 10,000 to be shipped in June 2023, and the remaining 10,000 to be shipped in October 2023. This order confirmation is attached hereto as Exhibit 3.

16. Nordsense also purchased 6,500 ER18505M*2 Lithium metal batteries through Nordsense's Electronic Manufacturing Service in Sweden.

17. Nordsense has purchased a total of 46,500 ER18505M*2 Lithium metal batteries

from Ultralife.

18.     The Batteries arrived, and Nordsense put them to their intended use, configuring them into its Sensors and distributing 26,465 Sensors containing Ultralife's Batteries worldwide.

19.     But then things started to go wrong. To Nordsense's surprise, in April 2023, one of Nordsense's customers reported that the Battery in the Sensor had overheated and melted, causing the fire alarm to go off. All electronics and casings were burned, and the building was evacuated.

20.     Nordsense soon received additional reports from customers of similar overheating.

21.     Nordsense immediately reported the incidents to Ultralife.

22.     Ultralife acknowledged that the overheating was due to the Batteries and suggested a possible solution – a firmware update – to stop Ultralife's Batteries from continuing to overheat and explode.

23.     Ultralife's suggested remedy failed spectacularly – not only failing to resolve the current overheating problems, but also leading to the failure of even more Sensors.

24.     Nordsense continued to escalate the issue to Ultralife, until Ultralife finally engaged an external consultant who claimed he could "solve" the issue. This too failed.

25.     Ultralife's external consultant claimed to have identified the root cause as unbalanced cells and the lack of a diode, a known safety hazard with batteries that can lead to overcharging, and potentially cause a fire or explosion. Ultralife and its expert informed Nordsense that, due to the severe safety risk, Nordsense would have to replace all Ultralife Batteries in its Sensors.

26.     Simultaneously, Nordsense conducted its own independent investigation into the design, manufacture, and function of the Batteries. Nordsense retained a well-established and

independent expert consultant, whose investigation revealed that there were severe construction issues within the Batteries that rendered them unfit for use in Nordsense's Sensors (or any product).

27. Over the past 16 months, Nordsense has continued to seek Ultralife's aid in resolving the issue to no avail.

28. During this time, the Batteries have continued to overheat – resulting in fires and, in some cases, explosions, posing a risk of significant property damage and personal injury.

29. Additionally, the Battery issues have caused substantial damage to Nordsense's reputation, as customers are apprehensive to use its Sensors after the many Battery incidents.

30. In its efforts to remedy the harm from the Batteries, Nordsense has been forced to retrofit all 26,465 Sensors that had been installed across the world, including in parks, cities, and schools.

31. Nordsense has not had a single incident with batteries from other suppliers.

32. Nordsense operates a subscription-based service and had to stop billing its customers due to the Battery defects. This revenue loss forced Nordsense to secure additional funding from its investors to prevent business failure.

33. Nordsense still has 10,545 defective and unusable Ultralife batteries in stock.

**Ultralife is Liable for Breach as the Principal of its Subsidiary Agent, Able**

34. As alleged in paragraph 17, Nordsense purchased 46,500 ER18505M*2 Lithium metal batteries pursuant to purchase orders with Able, acting as Ultralife's agent.

35. Able is a wholly owned subsidiary of Ultralife.[1] Able operates as Ultralife's agent,

---

[1] https://investor.ultralifecorporation.com/static-files/3f205fc1-22eb-4264-8500-c3b5ed00fb45 (Ultralife has a "100% ownership interest in ABLE New Energy Co., Limited, incorporated in Hong Kong, which has a 100% ownership interest in in ABLE New Energy Co., Ltd, incorporated in the People's Republic of China.")

-5-

with the express and apparent authority to contract for the manufacturing and supply of batteries at the direction and control of Ultralife.

36. At all relevant times, Ultralife exercised financial and operational control over Able and its employees.

37. In dealings with Nordsense and the public at large, Ultralife presents itself and its subsidiaries as a single entity that operates on a worldwide basis, without regard for geographic or jurisdictional boundaries. Indeed, Ultralife refers to Able (or, as it often calls it, "Ultralife China") as one of its international locations, both on its website and in SEC filings.[2] Similarly, on the "locations" section of its website, Ultralife lists its headquarters in Newark, New York, as well as Able as its "China" location.

38. Ultralife reports financial results and revenues across all entities jointly and with no meaningful distinction between Ultralife and its subsidiaries.

39. In ads and marketing materials, Ultralife refers to Able as just one of its "facilities"[3] and explains that it offers products from "our facilities in the US, Europe or China."

---

[2] *E..g.,* https://www.sec.gov/Archives/edgar/data/875657/000143774921024454/0001437749-21-024454-index.html ("We have maintained normal operations at all our facilities with the exception of an approximately one-month closure ***of our China facility*** as was mandated by the Chinese government through early March 2020.") (emphasis added).

[3] https://www.facebook.com/UltralifeCorp; https://blog.ultralifecorporation.com



Elsewhere, Ultralife explains that its batteries are made in China (at its Able facility) to "best facilitate []Europe and []Asian markets."[4]

40. Upon information and belief, Able is financially dependent on its parent and principal, Ultralife for, *inter alia*, "use of Ultralife's supply channels, production technology, process methods, and quality control management systems,"[5] allowing Able to "capitalize[] on Ultralife's mature distribution channels and sales [sic] all Ultralife's commercial products around the world."[6]

41. Upon information and belief, there is overlap at all levels of leadership of the two entities. For example:

---

[4] https://x.com/UltralifeCorp/status/1002316473921097728
[5] https://www.ultralifechina.com/index.php/en/ABLECompany/
[6] https://www.ultralifecorporation.com/aboutus

|  | **Ultralife** | **Able** |
|---|---|---|
| **Scott Nitti**[7] | Vice President Global Operations, Ultralife Corporation, May 2017 | Director & General Manager, Able New Energy Company (Ultralife Subsidiary), Shenzhen, China, December 2018 |
| **Xulong Zhang** | Vice President, Ultralife Corporation, August 2009 – Present | General Manager, Able New Energy, Date unknown |
| **David Gates** | Vice President, Operations, Date unknown | Director, Able New Energy Co. Limited (Wholly-Owned Subsidiary), Date unknown<br><br>Director, ABLE New Energy Co., Ltd (Wholly-Owned by ABLE New Energy Co. Limited), Date unknown |
| **Robert Green** | VP & General Manager, Ultralife Corporation, Date unknown | Director, Able New Energy Co. Limited (Wholly-Owned Subsidiary), Date unknown<br><br>Director, ABLE New Energy Co., Ltd (Wholly-Owned by ABLE New Energy Co. Limited), Date unknown |

42. Able's marketing contains similar representations reaffirming its status as the local office of Ultralife in China. For example, its website "***ultralifechina.com***" touts that "Ultralife Corporation is a leading provider of advanced, highest quality products and services . . . [with] strategic locations in the Americas, Europe, and Asia, ideally positioned to service global customers." It similarly lists Ultralife in Newark, New York as one of its locations on its website.

43. As alleged in paragraph 11, Nordsense worked with Ultralife, including Scott Nitti, Ultralife's then Vice President of Global Operations, regarding the potential purchase and the testing of Ultralife's batteries prior to entering into any Purchase Orders.

44. In those discussions, Nordsense was told to "consult UL," meaning Ultralife, who performed testing of the batteries prior to purchase and prepared a report for Nordsense on or

---

[7] https://www.ultralifechina.com/index.php/en/management/

around July 22, 2020.

45. Moreover, Able's technical evaluation document, which contained testing data regarding the Batteries, was sent to Nordsense bearing the stamp, "Ultralife Confidential", on each page.

46. The contract between Nordsense and Ultralife was for the sale of goods internationally.

47. Able acted with the express or apparent authority to contract on behalf of its principal, Ultralife, when entering into the agreements with Nordsense.

48. The purchase orders between Nordsense and Ultralife, were confirmed by Able under the express or apparent authority of Ultralife.

49. Nordsense reasonably believed that Able was acting as an agent of Ultralife, with the authority to contract for the international sale of goods.

50. Ultralife, as the principal, is bound by the contract between Nordsense and its agent, Able.

51. In the alternative, and for all the foregoing reasons, Able also had the implied authority to contract on behalf of Able.

## **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

52. Plaintiff Nordsense repeats and realleges the allegations contained in Paragraphs 1-51 as if fully set forth herein.

53. The United States, China, and Denmark, at all relevant times, are and have been signatories, parties, and contracting states to the United States Convention on Contracts for the International Sale of Goods ("CISG").

54. Ultralife, through its agent, Able, contracted with Plaintiff on valid and enforceable purchase orders, the terms of which Plaintiff accepted, and under which Plaintiff fully performed, for the cross-border international sale of goods.

55. Ultralife has failed to perform its obligations under the contracts, pursuant to trade practice and pursuant to the contracts, by delivering goods that do not conform with the contracts under CISG Article 35 (1-2).

56. Specifically, Ultralife breached the contracts by failing to provide batteries fit for the purposes for which batteries of the same description would ordinarily be used and by failing to provide batteries fit for use in Nordsense's Sensors.

57. As a result of Ultralife's failure to perform under the contracts, Plaintiff Nordsense has sustained damages and injury, including, but not limited to, its costs in investigating and replacing Ultralife's nonconforming Batteries, loss of goodwill, lost profits, and lost volume sales pursuant to CISG Articles 74 through 78.

**WHEREFORE**, NORDSENSE, INC., demands judgment as follows:

(1) On its cause of action for breach of contract, damages in the amount of $10,000,000;

(2) Lost profits and interest on those lost profits;

(3) Costs, disbursements, and attorneys' fees as allowed by law; and

(4) Such other and further relief as the Court deems proper.

Dated: November 13, 2024

COOLEY LLP

By: _____
Ian Shapiro

Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275
Email: ishapiro@cooley.com

*Attorney for Plaintiff NORDSENSE, INC.*

**JURY DEMAND**

Plaintiff Nordsense, Inc. demands a jury for all issues triable as of right to a jury.

Dated: November 13, 2024

COOLEY LLP

By: _____
Ian Shapiro

Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275
Email: ishapiro@cooley.com

*Attorney for Plaintiff NORDSENSE, INC.*